At Spring Term (3d Monday in March) 1866, of the Court of Equity for Chatham, a decree had been made in the case, that the defendant should pay to the plaintiff $407.00, etc.
If any execution had issued thereupon (there was some evidence of one,from the above Term,) it appeared that none had come into the hands of the Sheriff, until the one in question, styled an alias, which issued July 13th 1868, tested of Spring Term (105) 1868, and was levied, and returned to Fall Term. From Fall Term, 1868, a writ of Ven. Ex. issued, returnable to Spring Term 1869.
Upon due notice, a motion was made to set aside these last named writs.
His Honor granted the order, and the defendant appealed.
The decree was not dormant when the alias fi. fa. issued.
The act (Rev. Code, c. 31, § 109) which requires executions to issue within a year and a day, is a Statute of Limitations, and therefore was suspended when this decree was made, and has been so ever since, by the concurrent effect of the acts of 1866-'67, c. 17, and 1865-66, c. 50; and the Order, No. 10, of General Sickles, then commanding thisDepartment.* *Page 82 
He cited and relied upon Oliver v. Perry, 61 N.C. 581; Hinton(106) v. Hinton, Ib. 410; Morris v. Avery, Ib. 238; Den v. Love, Ib. 435; Mardre v. Felton, Ib. 279; Blankinship v. McMahon,63 N.C. 180; and submitted, that this case was distinguishable from those of Simpson v. Sutton, 61 N.C. 112; Griffis v. McNeill, (107) Ib. 175; Neely v. Craige, Ib. 187, and Jacobs v. Burgwyn, 63 N.C. 193.
* For convenience to the Profession, so much of Order No. 10 as affected civil proceedings is here inserted; giving the whole of such of the Paragraphs as are cited.
HEADQUARTERS, SECOND MILITARY DISTRICT, GENERAL ORDERS } CHARLESTON, S.C., April 11th, 1867. No. 10. }
* * * * * * * * * * *
I. Imprisonment for debt is prohibited; unless the defendant in execution shall be convicted of a fraudulent concealment or disposition of his property, with intent to hinder, delay and prevent the creditor in the recovery of his debt or demand. And the proceedings now established in North and South Carolina, respectively, for the trial and determination of such questions may be adopted.
II. Judgments or decrees, for the payment of money, on causes of action arising between the 19th of December 1860, and the 15th of May 1865, shall not be enforced by execution against the property or the person of the defendant. Proceedings in such causes of action, now pending, shall be stayed; and no suit or process shall be hereafter instituted or commenced, for any such causes of action.
III. Sheriffs, Coroners, and Constables, are hereby directed to suspend for twelve calendar months the sale of all property upon execution or process, on liabilities contracted prior to the 19th of December, 1860, unless upon the written consent of the defendants, except in cases where the plaintiff, or in his absence, his agent or attorney, shall upon oath, with corroborative testimony, allege and prove that the defendant is removing, or intends fraudulently to remove, his property beyond the territorial jurisdiction of the court. The sale of real or personal property by foreclosure of mortgage, is likewise suspended for twelve calendar months, except in cases where the payment of interest money, accruing since the 15th day of May 1865, shall not have been made before the day of sale.
IV. Judgments or decrees entered or enrolled, on causes of action arising subsequent to the 15th of May, 1865, may be enforced by execution against the property of the defendant; and in the application of the money arising under such executions regard shall be had to the priority of liens, unless in cases where the good faith of any lien shall be drawn in question. In such cases the usual mode of proceeding adopted in North and South Carolina, respectively, to determine that question, shall be adopted.
V. All proceedings for the recovery of money under contracts, whether under seal or by parole, the consideration for which was the purchase of negroes, are suspended. Judgments or decrees entered or enrolled for such causes of action, shall not be enforced.
VI. All advances of moneys, subsistence, implements and fertilizers loaned, used, employed or required for the purpose of aiding the agricultural pursuits of the people, shall be protected. And the existing laws which have provided the most efficient remedies in such cases for the lender, will be supported and enforced. Wages for labor performed in the production of the crop shall be a lien on the crop, and payment of the amount due for such wages shall be enforced by the like remedies provided to secure advances of money and other means for the cultivation of the soil.
VII. In all sales of property under execution or by order of any court. there shall be reserved out of the property of any defendant, who has a family dependant upon his or her labor, a dwelling house and appurtenances and twenty acres of land, for the use and occupation of the family of the defendant; and necessary articles of furniture, apparel, subsistence, implements of trade, husbandry or other employment, of the value of five hundred dollars. The homestead exemption shall inure only to the benefit of families — that is to say, to parent or parents and child or children. In other cases, the exemption shall extend only to clothing, implements of trade or other employment usually followed by the defendant, of the value of one hundred dollars. The exemption hereby made shall not be waived or defeated by the act of the defendant. The exempted property of the defendant shall be ascertained by the Sheriff, or other officer enforcing the execution, who shall specifically describe the same, and make a report thereof in each case to the court.
VIII. The currency of the United States, declared by the Congress of the United States to be a legal tender in the payment of all debts, dues and demands, shall be so recognized in North and South Carolina. And all cases in which the same shall be tendered in payment, and refused by any public officer, will be at once reported to these Headquarters or to the Commanding Officer of the Post within which such officer resides.
IX. Property of an absent debtor, or one charged as such, without fraud, whether consisting of money advanced for the purposes of agriculture, or appliances for the cultivation of the soil, shall not be taken under the process known as "Foreign Attachment;" but the lien created by any existing law shall not be disturbed, nor shall the possession or the use of the same be in any wise interfered with, except in the execution of a judgment or final decree, in cases where they are authorized to be enforced.
X. In suits brought to recover ordinary debts, known as actions excontractu, bail as heretofore authorized, shall not be demanded by the suitor, or taken by the Sheriff or other officer serving the process. In suits for trespass, libel, wrongful conversion of property, and other cases known as actions ex delicto, bail as heretofore authorized, may be demanded, and taken. The prohibition of bail in cases ex contractu, shall not extend to parties about to leave the State; but the fact of intention must be clearly established by proof.
The decree was entered at Spring Term 1866, and the Fi. Fa. before us, issued July 13th 1868. This was more than a year and a day after the rendition of the decree.
General Sickles' Order, No. 10, (April 11th 1867,) which was cited by the plaintiff, did not prevent the lapse of time from rendering the decree dormant, if for not other reason, because this effect had already been produced when the Order was issued. *Page 84 
The case of Neely v. Craige, 61 N.C. 187, is an authority to show the Acts of 1865-'66, c. 50, and 1866-'67, c. 17, do not prevent decrees from becoming dormant, and, for the reasons there assigned, we affirm the order of the Court below.
Per curiam.
Order accordingly.